IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARK FLYNN, WILLIAM HOWELL, WILLIAM RYAN MOORE, <br><br>*Plaintiffs,* <br><br>vs. <br><br>SANCHEZ OIL & GAS CORPORATION, <br><br>*Defendant.* | SA-19-CV-00867-JKP |

## **ORDER**

Before the Court in the above-styled cause of action are Defendant's Motion to Dismiss and Compel Arbitration [#12] and Plaintiff's Motion for Conditional Certification [#18]. This case was referred to the undersigned for all non-dispositive pretrial matters on September 30, 2019 [#15]. The District Court subsequently clarified that Defendant's Motion to Dismiss and Compel Arbitration was referred to the undersigned but that the District Court would take up the portion of the motion asking for dismissal, if necessary, after the undersigned issues a ruling on the request for arbitration. Accordingly, this Court has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A).

The Court held an Initial Pretrial Conference and motions hearing in this case on October 30, 2019, at which all parties appeared through counsel. Although the Court heard argument on Plaintiff's Motion for Conditional Certification at the hearing, the Court previously stayed Defendant's obligation to respond to the motion until after the Court resolved the issue of whether Plaintiff is required to arbitrate his claims against Defendant. After considering Defendant's Motion to Compel, Plaintiffs' Response [#13], Defendant's Reply [#14], the arguments of counsel at the hearing, and the governing law, and for the reasons set forth below,

1

the Court will deny Defendant's Motion to Compel; order the parties to confer and submit revised scheduling recommendations; and order Defendant to respond to Plaintiff's Motion for Conditional Certification within seven days of this Order.

**I. Background**

This putative collective action was filed by Plaintiff Mark Flynn on behalf of himself and all others similarly situated to recover unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Flynn alleges that he formerly worked as a Lease Operator for Defendant Sanchez Oil & Gas Corporation ("Sanchez") and was paid a day-rate with no overtime compensation. (Compl. [#1] at ¶ 9.) Since Flynn filed his Complaint, two other Plaintiffs have consented to join this suit—William Howell and William Ryan. (Consents [#8].) Flynn has moved to conditionally certify a class of "All Operators who worked for, or on behalf of, Sanchez, who were staffed through Tulsa Inspection Resources and paid a day rate at any time during the last three years." (Mot. [#18].) Sanchez has moved to dismiss Flynn's Complaint and to compel him to arbitrate his claims against Sanchez.

Sanchez's motion to compel argues that it is a third-party beneficiary of an arbitration agreement between Flynn and Cypress Energy Management-TIR, LLC ("Cypress-TIR"), the staffing company that provided Flynn to work for Sanchez. The record before the Court reflects that Flynn entered into an Employment Agreement with Cypress-TIR on July 21, 2017, which contains an arbitration clause. (Employment Agreement [#12-2] at ¶ 5.) The arbitration clause provides as follows:

> The parties agree that any dispute, controversy or claim arising out of or related to in any way to the parties' employment relationship or termination of that relationship, including this Employment Agreement or any breach of this agreement, shall be submitted to and decided by binding arbitration in Tulsa, Tulsa County, Oklahoma. Arbitration shall be administered under the laws of the American Arbitration Association in accordance with American Arbitration

2

Association Employment Arbitration Rules and Mediation Procedures in effect at the time the arbitration is commenced.

(*Id.*) There is also a provision in the Employment Agreement waiving class claims, providing that Flynn and Cypress-TIR "will not assert class action or representative action claims against the other in arbitration or otherwise . . . ." (*Id.* at ¶ 6.)

Tulsa Inspection Resources, LLC ("TIR"), an affiliate of Cypress-TIR, and its affiliates previously had entered into a Master Services Agreement with Sanchez, in which TIR agreed to perform personnel-related obligations for Sanchez and to indemnify Sanchez from and against certain claims. (Moyer Decl. [#12-2] at ¶ 2; Master Service Agreement [#12-1] at ¶ 11.) Flynn's Employment Agreement indicates that his employment was "based on a specific project to be performed for a designated customer" but does not reference Sanchez or any other customer by name. (Employment Agreement [#12-2] at ¶ 2.) The parties agree, however, that Flynn's duties as an employee of Cypress-TIR were to perform services for Sanchez. (Dunlap Decl. [#12-3] at ¶ 3.)

Before initiating this lawsuit, Sanchez previously sued TIR for the same FLSA claims raised here.[1] (Complaint [#12-4].) After TIR raised the arbitration agreement with Flynn's counsel, the parties filed a stipulation of dismissal and the case was dismissed without prejudice. (Email Correspondence [#12-5], Stipulation [#12-6].) Several months later Flynn filed this action against Sanchez.

---

[1] Sanchez asks the Court to infer maleficence by Flynn for separately suing both TIR and Sanchez for the same unpaid overtime compensation. But there is nothing in the FLSA that prevents an employee from suing multiple entities or individuals as its joint employers, in the same lawsuit or in two separate lawsuits.

Sanchez concedes it was not a party to the Employment Agreement between Cypress-TIR and Flynn. Sanchez nonetheless maintains it is entitled to enforce the arbitration agreement as a third-party beneficiary and that this case should be dismissed. Alternatively, Sanchez argues that Flynn is prohibited from avoiding his obligation to arbitrate by direct-benefits estoppel. The Court disagrees with both of Sanchez's contentions.

## II. Analysis

Sanchez's motion to compel arbitration is denied because Sanchez has not convinced the Court that Flynn and Cypress-TIR intended to make Sanchez a beneficiary of their arbitration agreement. Although Flynn indisputably entered an arbitration agreement with Cypress-TIR, he did not enter one with Sanchez, and nothing in the language of his agreement with Cypress-TIR evinces the parties' intent to extend the agreement to arbitrate to Cypress-TIR's customers generally or Sanchez specifically. Finally, Flynn's lawsuit is not barred by the doctrine of direct-benefits estoppel.

**A.     Sanchez is not a third-party beneficiary of the arbitration agreement.**

Courts apply a two-step inquiry in determining whether the parties have agreed to arbitrate a claim. "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). In the absence of a valid clause delegating the threshold issue of arbitrability to the arbitrator, both steps are questions for the Court. *Id.*

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists.

4

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (5th Cir. 2003). Hence, the party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

The parties agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, applies to the arbitration agreement at issue. (Mot. [#12] at 5; Resp. [#13] at 5.) "Section 2 of the FAA provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (quoting 9 U.S.C. § 2). Accordingly, "as a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original) (interpreting § 2). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc.*, 517 U.S. at 687.

Principles of state law also allow a contract to be enforced by or against nonparties through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotation omitted). *See also Todd v. Steamship Mutual Underwriting Association (Bermuda) Ltd.*, 601 F.3d 329, 336 (5th Cir. 2010) ("In *Carlisle*, the Supreme Court

made clear that state law controls whether an arbitration clause can apply to nonsignatories."). Accordingly, whether Sanchez, a non-party to the contract, is entitled to enforce the arbitration agreement as a third-party beneficiary is governed by state law, which the parties agree here is the law of Texas.

In Texas, there is a presumption against conferring third-party beneficiary status on noncontracting parties, which may only be overcome if there is clearly evidenced intent of the parties to make someone a beneficiary of a contract. *S. Texas Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). "The intent to confer a direct benefit upon a third party 'must be clearly and fully spelled out or enforcement by the third party must be denied.'" *Id.* (quoting *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). "Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract." *Id.* Stated another way, "[a] third-party beneficiary may enforce a contract to which it is not a party if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006).

In deciphering the parties' intent with respect to conferring third-party beneficiary status on a nonsignatory, this Court "must look solely to the contract's language, construed as a whole." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). Sanchez argues that it is a third-party beneficiary because "Sanchez's role as TIR's customer is essential to the agreement," as "Flynn's employment contract specifically contemplates his work for Sanchez" and "TIR owes an indemnification obligation to Sanchez." (Reply [#14] at 2–3.) In making these arguments, Sanchez relies primarily on two cases: *ConocoPhillips v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084 (Tex. App.—Houston [1st Dist.] 2012, no pet.) and *In re Citgo Petroleum*

6

*Corporation*, 248 S.W.3d 769 (Tex. App.—Beaumont 2008, pet. denied). But these cases support Flynn's position—not Sanchez's.

In *Citgo Petroleum*, the court held that the client of an employer was a third-party beneficiary of an arbitration agreement even though the client was not named specifically in the contract. 248 S.W.3d at 776. As in Flynn's Employment Agreement, the contract in *Citgo Petroleum* referenced "customers and clients generally" but did not name Citgo specifically. *Id.* However, unlike the arbitration clause in Flynn's Employment Agreement, the arbitration clause in *Citgo Petroleum* expressly stated that it governed disputes "between and among Employee and Employer . . . **and Employer's customer, and clients** . . . ." *Id.* at 773 (emphasis added). Accordingly, the court held that "[a]lthough the contract does not name Citgo specifically, the agreement is sufficiently clear to establish that the parties intended to cover entities in this category and the record establishes Citgo is a customer or client of [the employer]." *Id.* at 776.

Similarly, in *ConcocoPhillips*, the arbitration agreement required arbitration of all claims or disputes "between or among" the employees and the employer, as well as all disputes "between or among [the employees] **and [the employer's] subcontractors, contractors, clients, vendors, facility owners**" where employees perform services for the employer. 2012 WL 1059084 at *1 (emphasis added). The court reasoned that "the second category of claims identified in [the employees'] arbitration agreements expressly mandates arbitration of disputes in which [the employer] is not a party; that obligation to arbitrate such claims has no affect if it cannot be enforced by a third-party." *Id.* at *6. The court further found that the contractual language was "some indication" of the employer's intent for clients like ConocoPhillips to have the right to enforce the arbitration agreements. *Id.*

7

No such language exists in Flynn's arbitration agreement with Cypress-TIR. There is no reference whatsoever to any third-party customer in the arbitration provision of the Employment Agreement. Instead, the arbitration provision expressly states that it is the "parties"—Flynn and Cypress-TIR (the "employee" and "employer")—who are agreeing to arbitrate their disputes. (Arbitration Agreement [#12-2] at ¶ 5.) It is also only Flynn and Cypress-TIR who agreed not to assert class claims "against the other." (*Id.* at ¶ 6.) Nothing in the language of the arbitration provision itself supports Sanchez's position that the parties intended to confer on it the same status as the contracting parties vis-à-vis the agreement to arbitrate.

The Court is not persuaded by Sanchez's argument that the Employment Agreement's references to "customer" in another portion of the contract establishes the parties' intent to arbitrate employee claims against customers. *Cf. S. Texas Water Auth.*, 223 S.W.3d at 306 (stating that intent "must be clearly and fully spelled out or enforcement by the third party must be denied") (internal quotation omitted). The only references to "customer" in Flynn's Employment Agreement are that Flynn's employment was to "be performed for a designated customer" and "[m]aintaining a good working relationship with the customer is critical to the company's success and the employee's opportunity for employment." (Employment Agreement [#12-2] at ¶ 2.) Such language may demonstrate that Sanchez is an incidental beneficiary of the parties' contract but not that the parties intended to grant Sanchez the right to enforce Cypress-TIR's various agreements with its employees. *Cf. ConocoPhillips*, 2012 WL 1059084, at *7 ("In light of the contracts' express contemplation of an arbitration obligation in disputes to which [the employer] is not a party . . . , the benefit conferred on ConocoPhillips—the right to enforce [the employer's] arbitration agreements when sued by [its] employees—is not merely incidental.").

8

Moreover, Cypress-TIR, the drafter of the Employment Agreement, could have explicitly required its employees to arbitrate any claims against its customers but it did not do so—neither in the arbitration provision nor in the provision of the Employment Agreement that specifically addresses employee claims against Cypress-TIR's customers. That provision merely requires that the employee first contact Cypress-TIR before taking action against one of its customers so that Cypress-TIR has a "reasonable opportunity to resolve the matter." (Employment Agreement [#12-2] at ¶ 2.) Construing the Employment Agreement as a whole, the inclusion of this provision, and the fact that it does not impose a requirement that claims against customers be arbitrated, cuts against any inference that the parties intended for customers like Sanchez to have the power to compel employees to arbitration.

Nor is the Court persuaded that *Citgo Petroleum* and *ConocoPhillips* stand for the proposition that the existence of an indemnification agreement between an employer and its customer, without more, establishes the intent to confer third-party beneficiary status on a customer who is sued by an employee. In both cases, the customer seeking beneficiary status and the employer had valid indemnity agreements that governed their relationship with each other. The *ConocoPhillips* court reasoned that the presumption against conferring third-party beneficiary status "has less force when . . . the contractual rights relate to dispute resolution of specific claims, as to which a contracting party owes a duty of indemnification and defense to the third-party claiming the benefit." 2012 WL 1059084, at *7. And in *Citgo Petroleum* the court opined that the fact that the employer agreed to indemnify the customer for damages, including arbitrator's fees, suggested "one reason" the employer intended to give the customer the right to enforce the arbitration agreement with the employee. 248 S.W.3d at 777.

In other words, it was *one* reason—not the sole or dispositive reason—that supported the court's decision to confer third-party beneficiary status on the customer. Neither court suggested that indemnification agreements between employer and customer—unaccompanied by any language in the arbitration agreement between employer and employee referencing third parties—would allow a court to infer an agreement by the employee to arbitrate claims against the customer. Here, there is no evidence that the "primary parties contemplated that the third party would be vested with the right to sue for enforcement of the contract," and all presumptions run against affording Sanchez this right. *Whitten v. Vehicle Removal Corp.*, 56 S.W.3d 293, 312 (Tex. App.—Dallas 2001, pet. denied); *see also MCI Telecomms.*, 995 S.W.2d at 651. In sum, Sanchez has not established it is a third-party beneficiary with authority to enforce the arbitration agreement at issue.

**B.     Direct-benefits estoppel does not apply to prevent Flynn from filing this lawsuit.**

Sanchez contends that Flynn's lawsuit is barred by the Texas doctrine of direct-benefits estoppel. The undersigned disagrees.

"Direct benefits estoppel applies when the claim depends on the contract's existence and would be 'unable to stand independently' without the contract." *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 609 (5th Cir. 2016) (quoting *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 528 (Tex. 2015) (internal quotation omitted)). "[W]hen the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law, rather than from contract, direct benefits estoppel does not apply, even if the claim refers to or relates to the contract." *G.T. Leach Builders*, 458 S.W.3d at 528 (internal quotation omitted).

In arguing that direct-benefits estoppel applies to Flynn's FLSA claims (claims unquestionably arising from federal law), Sanchez directs the Court to a district court opinion from the Southern District, *Randle v. Metro. Transit Auth. of Harris Cty.*, No. CV H-18-1770, 2018 WL 4701567 (S.D. Tex. Oct. 1, 2018), in which the court applied direct-benefits estoppel to allow a nonsignatory to an arbitration agreement to nonetheless compel arbitration of an employee's FLSA claims. In *Randle*, the plaintiff worked as a driver for Metro, who in turn contracted with Yellow Cab to provide it with drivers. 2018 WL 4701567, at *1–2. The plaintiff entered into service agreements with Yellow Cab, which permitted him to work for Metro and detailed the terms of his employment with Metro, provided him with a Metro route, Metro vehicle, and necessary insurance. *Id.* at *10. Because the Yellow Cab agreements established the parameters for the plaintiff's employment with Metro, the court reasoned that the plaintiff's agreements with Yellow Cab were necessary for an adjudication of his FLSA claims against Metro. *Id.*

The same conclusion is not compelled here. Although the Employment Agreement explains Flynn's duties to Cypress-TIR, including some general duties that he had with regard to customers of Cypress-TIR, the Employment Agreement does not specifically name Sanchez, provide the details of the specific work he would perform for Sanchez, or incorporate the Master Service Agreement into the Employment Agreement, as did the employment agreements in *Randle*. *Cf. id.* at *10 ("His rights to work in the METROLift program are defined through his Yellow Cab Agreements and the incorporation of the METRO Contract into those Agreements.")

Flynn's claims are statutory and arise under the FLSA, a federal law, and not the contract. Moreover, whether Sanchez was Flynn's employer under the FLSA and whether Flynn is ultimately entitled to overtime compensation as an employee under the FLSA does not depend

11

on the terms of Flynn's employment agreement.  Rather it turns on the economic realities of Flynn's relationship with Sanchez.  *See Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010); *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).  To be sure, the parties may point to the Employment Agreement as evidence relevant to their competing theories of the nature of Flynn's relationships with Sanchez and with Cypress-TIR.  But ultimately, no matter what was promised or documented, what will be dispositive under the FLSA will be how the parties in reality behaved.  *See Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 837 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (refusing nonsignatory's request to apply equitable estoppel and compel arbitration where suit against nonsignatory did not rely on employment contract to assert claims for race discrimination, intentional infliction of emotional distress, or negligent hiring, supervision, and retention).  Flynn's FLSA claims against Sanchez "relate to the contract" with Cypress-TIR but do not arise from it.  *See G.T. Leach Builders*, 458 S.W.3d at 528.  Direct-benefits estoppel does not apply to bar Flynn from filing this suit in federal court.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Arbitration [#12] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant respond to Plaintiff's Motion for Conditional Certification [#18] within **14 days** of this Order.

**IT IS FINALLY ORDERED** that the parties confer and submit revised scheduling recommendations within **seven days** of the Court's order on Plaintiff's Motion for Conditional Certification.  This ruling does not prevent the parties from commencing discovery.

**IT IS SO ORDERED**.

SIGNED this 5th day of December, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE